ALFRED J. HIGGINS, Appellant, v. PHILIP APPLEBAUM and DAVID STARK, Respondents.

First Department, March 7, 1919.

Corporations — contract to form corporation construed — action for breach of contract — breach of agreement by corporation to employ party to contract — failure to advance money for use of corporation for payment of stock of other parties to contract — right of action by stockholder against director for failure to furnish moneys pursuant to contract resulting in depreciation of value of plaintiff's stock — right of action for willful misfeasance by directors.

Plaintiff having been offered a dealer's contract by an automobile company entered into a contract with the defendants to form a corporation the capital stock of which was to be equally divided between them, the plaintiff and one defendant to pay one-tenth of their subscriptions and the other defendant to pay his subscription in full for his own stock and in addition to advance a sum sufficient to pay the balance due on the subscriptions of the plaintiff and the other defendant and to hold the stock as collateral therefor. The plaintiff was to be employed by the corporation at a weekly salary and the business was not to be disposed of without the consent of all. In an action by the plaintiff against the defendants for a breach of the contract,

Held, that the agreement that the plaintiff should be employed at a certain sum per week, not providing for a specific time of employment, did not render the defendants liable for the refusal to further employ the plaintiff.

A stockholder as a general rule has no right of action against a director for wrecking the corporation and depreciating the value of the stock. But where the value of his stock has been depreciated by the failure of his co-contractor to furnish moneys needed by the corporation which he has stipulated to advance, then the damage is directly traceaule to his breach of contract and for that damage he may be held individua..y liable to the stockholder whose stock has been thus depreciated.

Since there is no allegation that the automobile company was under any binding obligation to give the plaintiff a dealer's contract, or that he was in any position to accept the same without the aid of the defendants, if they were guilty of a breach of trust in disposing of said contract through an assignee for the benefit of creditors, any liability would be to the corporation and not to the plaintiff.

For any willful misfeasance by the defendants as directors of the corporation the cause of action rests with it and not with the plaintiff individually.

The failure of the defendants to fulfill their agreements and to pay over to the corporation the amounts which they agreed to pay constitutes a breach of their contract with the plaintiff. Although the corporation may have the right of action against the defendant who agreed merely to pay in cash

one-tenth of his subscription, the plaintiff alone can sue for the breach of contract of the other defendant to advance money for the full payment of the stock of the plaintiff and the defendant. Said contract obligation survived the formation of the corporation and plaintiff is entitled to prove, if he can, that his stock has been made worthless or depreciated in value through this breach.

Hence, it was reversible error for the court to hold that the plaintiff was only entitled to recover nominal damages.

APPEAL by the plaintiff, Alfred J. Higgins, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Bronx on the 15th day of May, 1918, upon the verdict of a jury in plaintiff's favor for the sum of six cents rendered by direction of the court, and also from an order entered in said clerk's office on the 13th day of May, 1918, denying plaintiff's motion for a new trial made upon the minutes.

*Isaac N. Jacobson* of counsel [*May & Jacobson,* attorneys], for the appellant.

*Henry W. Fried* of counsel [*J. M. Cohen* with him on the brief], for the respondents.

SMITH, J.:

In July, 1917, the plaintiff and the two defendants proposed to organize a corporation for the sale of Chevrolet automobiles and the plan materialized by forming the corporation. The plaintiff had been offered a dealer's contract by the Chevrolet Motor Company for the borough of The Bronx and agreed to procure for the corporation this contract. The capital stock of the corporation was to be $15,000, to be divided equally between them. The plaintiff was to pay on his subscription $500. The defendant Stark was to pay on his subscription $500. The defendant Applebaum was to pay $5,000 in full for his own stock and in addition was to advance $9,000 for the plaintiff and Stark to pay for their subscriptions and was to hold the stock as collateral thereto. The plaintiff was to be employed by the company at a weekly salary of $50.

The corporation was formed and was known as the A. S. H. Auto Co., Inc.; the stock was issued to the various parties. The plaintiff contributed his $500 to the company's treasury. Applebaum paid in full his $5,000 and an additional $1,000

on account of the $9,000 as a part advance of the subscription of Stark and the plaintiff, but Stark did not pay anything. The plaintiff did procure the dealer's contract with the new corporation. The corporation began business in August, 1917, leased premises in The Bronx for twenty years, and employed the plaintiff at the rate of $50 a week, and continued in business until October 13, 1917. The complaint further alleges that the plaintiff performed his part of the agreement and the defendants failed to do so, in that Stark did not pay for his stock $500; that Applebaum failed to pay into the corporation the $8,000, the balance of his subscription price for the stock of the plaintiff and Stark, and, further, that Applebaum and Stark conspired and passed resolutions on October thirteenth discontinuing his salary, and paid Applebaum out of the corporate funds $1,000, and at another meeting Stark and Applebaum acted together and resolved to make an assignment for the benefit of the creditors to one Warshaw, who was the brother-in-law of Applebaum. It is further alleged that the assignee sold the assets of the corporation to the defendants who thereupon continued the business of the corporation for themselves and ejected the plaintiff from the corporation.

The plaintiff claims that as a result of the contract with the defendants he has been deprived of the dealer's contract, his contribution of $500 towards the capital stock, his salary of $50 a week from the company, and, lastly, his prospective profits that his shares would have earned for him.

These facts were all conceded to be true for the purposes of this action and the trial court held that upon them the plaintiff was entitled only to nominal damages.

This plaintiff in another action has sued the defendants under sections 90 and 91 of the General Corporation Law (Consol. Laws, chap. 23; Laws of 1909, chap. 28), to compel them to account for their official conduct in the management and disposition of the company's property. Upon an appeal to this court we held that the complaint stated a cause of action. (See 183 App. Div. 527.) But that action was an entirely different action from the one now sought to be maintained, and a recovery therein would be in behalf of the corporation and rests upon entirely different principles.

The situation here presented is that of three parties who desire to engage in the automobile business in the sale of the Chevrolet automobiles. We may infer that this business needed a certain amount of capital. An agreement is made between the three parties for the formation of a corporation with $15,000 of stock, each of the three to subscribe for $5,000; that the plaintiff and Stark were to pay down only $500 while the defendant Applebaum agreed to advance $9,000 for the balance of the stock which was to be issued to the plaintiff and Stark, and this stock so issued was to be handed over to Applebaum as his security for the loan. It was further provided that the business was not to be disposed of except with the consent of all parties. It seems that this contract for the sale of these Chevrolet automobiles had been offered to the plaintiff and it may fairly be presumed that the plaintiff needed the assistance of the defendants in order to raise the money to accept the contract, but the plaintiff was interested to insert into the contract the stipulation that the business should not be disposed of without the consent of all. In the case of *Lorillard* v. *Clyde* (86 N. Y. 384) an agreement as to the management of the corporation made between parties who were about to form a corporation was held to be lawful, and it was there stated: " But it is to be observed, that the agreement was between the parties, who were to contribute the entire capital." In section 31 of Conyngton's Corporate Organization and Management (1917 ed.) there is discussed the effect of these agreements among incorporators, and it is said: " Among the parties these agreements are perfectly proper and legitimate, but they affect the corporation only so far as they are incorporated in its charter or by-laws when these are drawn," and at page 34 it is stated: " Even formal agreements between promotors as to the subject matter of a charter can rarely be specifically enforced, and the only recourse of the aggrieved party. is a refusal to participate in the subsequent organization of the corporation, or, if damages can be shown, to bring a suit against the offending parties for their breach of contract." These agreements between incorporators before incorporation are sometimes embodied in the charter and by-laws of the corporation, in which case they presumably release the original incorpora-

tors from liability to each other, but many times they are not embodied in the charter and by-laws of the corporation, in which case the incorporators may remain liable between themselves upon the agreements. Such is the case of *Lorillard* v. *Clyde* (*supra*) in which it was held that an agreement between parties about to form a corporation, that the entire capital stock shall be represented by property which they shall severally contribute, at a valuation agreed between themselves, is not condemned by any principle of public policy, and that a stipulation in said agreement that one party to which the management of the corporation was given, should guarantee a dividend of not less than seven per cent for seven years to the other party, was a valid and enforcible agreement although it was not included in the charter or by-laws of the corporation so as to become an obligation of the corporation. The agreement that the plaintiff should be employed at $50 per week may have been assumed by the corporation, but under the authority of *Watson* v. *Gugino* (204 N. Y. 535) as long as that agreement provided for no specific time of employment, no liability resulted from a refusal to further employ the plaintiff. The agreement of Applebaum, to advance $9,000 for the use of the corporation for the payment of the stock of the plaintiff and of Stark was a personal agreement, never made to the corporation or intended to be made to the corporation, but was an individual agreement with plaintiff for the breach of which, if the plaintiff has been damaged, he has the right of recovery. The complaint alleges that the corporation was solvent, but that its embarrassment arose solely from the failure of the defendant Applebaum to carry out his agreement to advance this $9,000 for the payment of stock. If, by reason of the breach of this covenant of the contract obligation, the corporation's assets have been sold out and plaintiff's stock has become valueless, then he has suffered an injury for which the defendant Applebaum is liable. It is true that ordinarily a stockholder has no right of action against a director for wrecking the corporation and depreciating the value of the stock. Where, however, the value of his stock has been depreciated by the failure of his co-contractor to furnish moneys needed by the corporation which he has stipulated with plaintiff to advance,

then the damage is directly traceable to his breach of contract and for that damage he may be held individually liable to the stockholder whose stock has been thus depreciated. It is true with the right of a corporation to sue the directors and recover for any breach of trust, that there may be difficulty in determining just to what extent the plaintiff's stock had been depreciated by the failure of the defendants to perform their contracts, but the same difficulty was argued in the case of *General Rubber Company* v. *Benedict* (215 N. Y. 18) and Judge CARDOZO there sustained the cause of action, notwithstanding this difficulty 'n ascertaining the exact extent of the plaintiff's damage. As to the contract with the Chevrolet Company which had been offered to the plaintiff, there is no allegation that that company was under any binding obligation to give to him a contract, or that he was in any position to accept the contract without the aid of the defendants, and if the defendants were guilty of a breach of trust in disposing of that contract through an assignee for the benefit of creditors, any liability, therefore, would be to the corporation and not to the plaintiff.

The plaintiff's main argument is an attempt to sustain this cause of action as an action for tort under the authority of *Rich* v. *N. Y. C. & H. R. R. R. Co.* (87 N. Y. 382). Although this case was decided in 1882, I am unable to find any cases in this State which have been based upon that as authority for holding that a contract maliciously violated constitutes tort. That case was referred to by Mr. Justice BEEKMAN at Special Term as being a peculiar case (*Kolel America Vatiferes Jerusalem* v. *Eliach,* 29 Misc. Rep. 503), and attention was called to the concluding paragraph of the opinion, which reads as follows: " We are not concerned with the question of the wisdom of the plaintiff's choice of his form of action, or of what may result if the cause of action pleaded as a tort shall be hereafter assailed, instead of its sufficiency being conceded. It may well be that he has chosen the one most difficult to maintain, and that an action upon one or more of the contracts would be less surrounded by difficulties. But we have nothing to do with his choice. He is entitled to prove his cause of action if he can." For any willful misfeasance by the defendants as

directors of this corporation, the cause of action rests with the corporation and not with the plaintiff individually. There is no claim that the arrangements for the corporation were made by the defendants with any fraudulent intent. The only breach of good faith charged arises from the defendants' acts after the formation of the corporation in the exercise of their official functions.

The failure of the defendants Applebaum and Stark to fulfill their agreements and pay over to the corporation the amounts which they agreed to pay constitutes a breach of their contract with the plaintiff. It may be that the corporation would have the right of action against Stark to recover upon his subscription, but the plaintiff alone can sue for the breach of the contract of the defendant Applebaum to advance the $9,000 for the full payment of the stock of the plaintiff and Stark. That contract obligation survived the formation of the corporation and plaintiff is entitled to prove if he can that his stock has been made worthless or depreciated in value through this breach. It was error for the court to hold, therefore, that the plaintiff was only entitled to recover nominal damages and for this error the judgment and order must be reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., DOWLING, PAGE and SHEARN, JJ., concurred.

Judgment and order reversed and a new trial ordered, with costs to appellant to abide event.