ARTHUR PAULSON, Appellant, *v.* JOHN A. MARGOLIS, Respondent.

First Department, February 26, 1932.

*Frank Parker Ufford*, for the appellant.

*David Paine* of counsel [*Orison S. Marden* with him on the brief; *White & Case*, attorneys], for the respondent.

SHERMAN, J.   Plaintiff, while not questioning the validity of the cause of action successfully maintained by defendant by way of counterclaim, contends that the rule of damages applied by the learned trial justice was incorrect.   The jury found for defendant damages under the counterclaim sufficient to extinguish defendant's conceded liability upon his note for $5,000 given to Long, plaintiff's assignor, and made the basis of the second cause of action.

This counterclaim alleges, in substance, that in January, 1929, defendant and Long entered into an agreement to turn over to a corporation, to be formed, the individual lumber business which each had theretofore conducted; that pursuant thereto, the Long-Margolis Lumber Company, Inc., was incorporated in New York, each of them subscribing to one-half of the capital stock, and each becoming a director of the corporation; that Long became its president and Mrs. Long its treasurer.   Defendant further pleaded that while he performed all the conditions of the contract, Long in violation of that agreement continued his individual lumber business, and, with his wife's connivance, misappropriated the corporation's business and assets, with resultant loss to defendant of the salary, profits and dividends which the corporation would otherwise have paid to him; that it was necessary to dissolve the corporation and bring suit against both Longs under section 60 of the General Corporation Law to compel the restoration of the misappropriated business and assets, which suit was a representative one brought by defendant as a director and officer of the corporation and is still pending in the United States District Court.

At the close of the entire case defendant's answer was amended to include, as damage, the loss in intrinsic value of defendant's shares of stock.

Plaintiff claimed at trial that Long's agreement was not to turn into that corporation the business which he had theretofore conducted at Somerville, N. J., but only such New York trade as he could obtain by solicitation, and that unsolicited trade, coming to his Somerville business belonged to him.   The jury, resolving that issue in favor of defendant, came to assess damages.

No evidence was introduced to show the intrinsic or the market value of Margolis' shares, but the proof offered and received to uphold an award of damages was that Long's lumber sales (which should have been carried out by the corporation) amounted to a sum in excess of $100,000, upon which Long should have made at least a profit of fifteen per cent, amounting to $15,000, and, as defendant owned one-half of the capital stock, it was, therefore, to be concluded that his damages under the contract between the parties amounted to at least $7,500, which sufficed to offset completely defendant's conceded liability upon his personal note for $5,000.

In effect, defendant has been permitted to recover directly, as personal damage, one-half of the profits which it was estimated that Long made in his individual business at Somerville. This was allowed notwithstanding Margolis' allegation that such profits belonged to the Long-Margolis Lumber Company, Inc., and are explicitly sought to be recovered in the pending representative action in the Federal court.

In charging the jury the court mentioned as elements of damage loss of profits or dividends which defendant would have received but for Long's breach of contract. The charge did not bring clearly to the jury's attention any damage fixed by depreciation in the value of defendant's shares and ascribable to Long's breach. But the court told the jury that any sum awarded to Margolis herein by way of damages would be in diminution of any recovery against Long in the action pending in the Federal court, because defendant's counsel had during this trial announced that such allowance would be credited to Long. This was erroneous and may well have misled the jury. Defendant, as a shareholder, was without power to make a binding and enforcible agreement of that kind, for his interest in the corporate funds cannot be determined until after all creditors of the corporation shall have been paid and all taxes levied satisfied. Further, it is possible that defendant himself might be found personally indebted to the corporation due to his transactions with it, which would have to be paid before he could share in the corporate assets, even upon dissolution. These and like situations could be resolved in equity, but not upon the trial of the counterclaim which sets forth a cause of action at law.

It is well settled that for debts due to a corporation a stockholder has no individual right of action. " In no legal sense can the business of a corporation be said to be that of its individual stockholders." (*People* v. *American Bell Telephone Co.*, 117 N. Y. 241, 255.) " The whole title to it is in the corporation and the shareholders are neither tenants in common nor in any legal sense the

owners of it." (*United States Radiator Corp.* v. *State of New York,* 208 N. Y. 144, 152.)

While it is true that an individual may be liable for his acts in breach of such a contract, as was shown here, not only to the corporation, but to the party with whom he contracted to form it, such liability in each instance springs from the violation of a duty owing to the one (individual or corporation) claimed to be damaged thereby. If a separate duty was owing and survived to each, he may find himself liable to both (*Ritchie* v. *McMullen,* 79 Fed. 522, 533; *Higgins* v. *Applebaum,* 186 App. Div. 682) and be cast in double damages.

It is important to note that Long's liability in damages here is not the outgrowth of his acts as a director and officer of the corporation, for it alone can maintain an action against a director for any waste due to his misfeasance in office, *qua* director. (*General Rubber Co.* v. *Benedict,* 215 N. Y. 18, 23; *Matter of Auditore,* 249 id. 335, 341.)

It is contended, however, that defendant was properly awarded damages because of loss of profits and dividends to which he might have become entitled as a shareholder, if the profits from Long's business had been earned and received by the corporation. This loss, it is said, is necessarily reflected by a diminution in the value of the stock.

Without a reckoning of the corporate assets and liabilities as well as knowledge of its financial condition and business prospects, the effect of the deprivation of these unrealized earnings upon the value of the shares held by defendant cannot be estimated. It is pure speculation.

Such damage is extremely remote and is also not a direct consequence of the breach so as to be recoverable in this action by Margolis. " Even though the depreciation in the value of the stock be capable of ascertainment as a basis of damages at law, the wrongs complained of are wrongs against the corporation, and it has a cause of action for the restoration of the property or for the damages sustained." (*Niles* v. *N. Y. C. & H. R. R. R. Co.,* 69 App. Div. 144, 148; affd., 176 N. Y. 119.)

Further, if the jury were to be allowed to assess here such damages, in reaching the amount thereof they should have taken into account the value of the corporation's cause of action against Long. (*General Rubber Co.* v. *Benedict, supra,* 26.) No instruction to that effect was given and the jury was without adequate guidance in reaching their verdict.

The judgment and order so far as appealed from should be reversed, the action severed and a new trial ordered as to the second

cause of action and the counterclaim, with costs to the appellant to abide the event.

FINCH, P. J., and MARTIN, J. concur; MERRELL, J., dissents; McAVOY, J., taking no part.

MERRELL, J. (dissenting). Plaintiff in his complaint alleges two causes of action, the first being upon a promissory note for $1,500, and the second upon a promissory note of defendant for $5,000. Plaintiff succeeded as to the first cause of action, but as to the second the jury found in favor of the defendant. Defendant has not appealed from the judgment rendered against him on the first cause of action. Separate verdicts under the direction of the court were rendered as to each cause of action, the verdict in defendant's favor on the second cause of action being on the $5,000 note was based upon the counterclaim alleged by defendant in his answer as to said second cause of action. The counterclaim was not applicable to the first cause of action. Plaintiff not only appeals from so much of the judgment as allowed the defendant's offset against the $5,000 note set forth in the second cause of action, but also appeals from the order denying plaintiff's motion for a new trial. In the complaint in the second cause of action the usual facts are alleged with reference to a promissory note alleged to have been executed by the defendant and payable to the order of one W. S. Long. Plaintiff is the assignee of Long, and it was claimed in the answer that the nominal plaintiff in this action was a dummy and not the real party in interest, and that Long is still the real party in interest and is suing through said dummy. Such defense, however, was stricken out at the trial on consent of the defendant. There is no question that plaintiff is the holder of the $5,000 note in due course, and there is no question that the assignment to him of the note in suit was subject to any defenses against it at the time of its assignment to plaintiff by Long. Besides denials, the answer of the defendant sets up two defenses, the first defense being that plaintiff is not the real party in interest, which was stricken out, as aforesaid.

In the second defense and counterclaim the defendant alleges in his answer that plaintiff's assignor, Long, and the defendant entered into an agreement whereby each party was to turn over to a company to be organized the entire lumber business which each party theretofore had conducted in his own name, and that each party should desist from continuing further business as an individual, and devote his entire time and business to the corporation to be formed. Defendant alleges that pursuant to such agreement there was organized and incorporated the Long-Margolis Lumber Co., Inc., under and

pursuant to the laws of the State of New York, with a capital stock of $10,000, of which $5,000 was subscribed by defendant and $5,000 by Long; that Long was elected president and a director of the corporation; his wife, Annie C. Long, its treasurer and a director, and that defendant became vice-president and secretary and a director. Defendant further alleges that he duly performed all of the conditions in such contract, but that Long breached same with the assistance and connivance of his wife, and after the formation of the corporation continued secretly to conduct his individual lumber business in competition with the business of the corporation, solely for the benefit of himself and wife, and diverted and misappropriated the business and the proceeds and assets of the corporation for himself and his wife, and that the said Long used and appropriated the office and funds of the corporation for his own individual business. Defendant alleges that as the result thereof defendant lost salary, profits and dividends the corporation otherwise would have paid him, and that it became necessary for him to dissolve the corporation, and to bring suit against Long and his wife under section 60 of the General Corporation Law to compel restoration of the assets misappropriated by them, and that such action was pending in the United States District Court. Defendant also alleges that he was compelled to organize a new corporation for the purpose of carrying on and restoring his own lumber business, and that he suffered damages in a sum exceeding $50,000.

Clearly such counterclaim was good, if defendant was able to establish the facts therein alleged. Inasmuch as the action is brought by plaintiff as assignee of Long, the extent that such counterclaim can operate would be merely as an offset against the sum which plaintiff seeks to recover herein. The amount proven to be plaintiff's due upon the $5,000 note was $5,667.99, including interest. It was only, therefore, necessary for defendant to show that he suffered damages in at least the sum claimed by plaintiff in order to defeat plaintiff's recovery on the second cause of action.

After the evidence was closed the defense and counterclaim alleged in the answer of the defendant were amended to conform to the proof adduced by the defendant at the trial in accordance with the provisions of section 434 of the Civil Practice Act, and specifically so as to include the loss of the value of the stock of defendant among the items of loss alleged in the answer as flowing from the wrongful acts of plaintiff's assignor. The allowance of such amendment is one of the grounds upon which plaintiff asks reversal. I think, however, there was no error in the court's allowing such amendment to conform to the proofs, and it is very doubtful, under the pleadings, if any amendment was necessary. I do not think

its allowance constituted any reversible error. In charging the jury the court instructed them as follows: " Now, if you find that he [Long] made profits during those thirteen months and if you believe the contention of Margolis that there was an agreement to turn over all business to the corporation on the part of both, then, whatever profits you find Long made during those months are the profits that should be credited to the corporation, one-half of which Margolis is entitled to receive."

It, therefore, appears that the following issues of fact were presented by the testimony and were left by the justice presiding at the trial for the determination of the jury: *First*, as to whether Long and the defendant had agreed that each was to turn in his entire lumber business to the new corporation to be formed. This claim of defendant is contradicted by the testimony of Long. *Second*, if the defendant's version is correct, how great was Long's business, and what profit would the new corporation have received had that business been turned in? It was the contention of defendant that the profit to which the corporation was entitled was at least $15,000, and that owing to the fact that Long did not turn in his business to the new corporation, the defendant was damaged by one-half of that amount, at least. Upon these two issues the jury found for defendant. I think the evidence at the trial was entirely sufficient to justify such finding. The evidence very clearly indicates that Long did not turn in his business, and that with the assistance of his wife he carried on the same secretly and on occasion actually bid on contracts against his corporation. The evidence clearly showed that for several years prior to January, 1929, the defendant had sold on commission for the E. J. Sterner Company of New York and that his total sales for 1928 reached a figure between $112,000 and $114,000, earning gross profits of $31,000 upon which his commissions were approximately $13,500. The evidence also showed that Long was engaged in the lumber business at Somerville, N. J., and that he had desk room with the E. J. Sterner Company. Long testified that he quoted prices on hardwood that the Sterner Company sold, he supplying the lumber to fill such orders, and that Long's lumber business had averaged around $100,000 a year for several years. It appears from the evidence that Long and the defendant were thrown together, each having desk room in the office of the E. J. Sterner Company. They became acquainted early in 1926. According to the testimony of defendant, Long approached him in November, 1928, and suggested that they go into business together. Margolis had in contemplation at that time a plan to go into business for himself the first of the coming year, and had completed pending arrangements

therefor. However, the defendant testified that while he hesitated to alter his plans, he was interested in Long's proposal, knowing that Long had a good hardwood business at Somerville, N. J. Negotiations, according to the defendant, followed, in which Long and the defendant compared notes as to their respective enterprises. The defendant told Long, according to his testimony, that his sales for the year from December 1, 1927, to December 1, 1928, were between $100,000 and $114,000, with a gross profit of $31,000, of which his share would be about $13,500 net. This is not denied by Long. At that time Long told Margolis that his sales had averaged around $100,000 for several years. Following this comparing of notes, an agreement, according to defendant's testimony, was made and the corporation formed. Long thought that $10,000 was sufficient capital, and suggested that as the defendant would have to borrow his share to make up the capital investment, that he himself would put in defendant's share in return for a $5,000 note. This was agreed to and it was agreed that the joint venture should be incorporated under the name of Long-Margolis Lumber Co., Inc., and that Long should be president, and his wife treasurer, and that defendant should be vice-president and secretary. Each of the three was to be a director of the new corporation, as was also a brother of defendant. Under the arrangement Margolis was to receive fifty per cent of the corporate stock and Long forty-nine per cent and his wife one per cent. Each was to have a drawing account of $100 per week for services. According to the testimony of the defendant it was further agreed that both Long and he should turn over to the new corporation all the business which each of them had and that each should devote his entire time to the interests of the corporation. It was agreed that the corporate books should be kept at Somerville, N. J., and the bank account of the corporation was to be with the Somerville Trust Company. It will be seen that from such arrangement Margolis was never in touch with the business situation of the corporation. The new corporation leased offices at 415 Lexington avenue, New York city, on December 29, 1928, and the new corporation commenced business on February 1, 1929. Announcement cards were printed and distributed to the trade, particularly to the former customers of both the joint adventurers. This card, according to the testimony of defendant, was prepared by both Long and himself, and referred to an unconditional merger of their business interests. The new corporation ceased to do business on April 7, 1930, after an existence of fourteen months. During this period the company did a business of $125,228.56. Of this sum the evidence shows that Margolis produced approximately $117,000, while Long's contribution was only a

little over $8,000. Long was unable at the trial to state the name of a single new customer which had been produced as the result of his efforts during the fourteen months that the corporation operated. The evidence shows that from the outset Long was working secretly and in entire disregard of his agreement with the defendant; that he sold lumber secretly for his own account and for his private profit, and, as before stated, competed with the corporation of which he was president. The evidence also shows that his wife took an active part in the lumber business. The evidence shows that in 1929 Long did a personal business of from $100,000 to $400,000. When examined before trial Long denied ever making the agreement to which defendant had testified, and denied that he had ever agreed to turn in all of his business to the new company, and claimed that he was only to turn over such business as could be obtained by direct solicitation in New York State. At the trial he gave similar testimony, and disclaimed that defendant had ever discussed with him how much business he could turn over to the new corporation. Considerable evidence was given on the part of defendant showing Long's duplicity and unfairness toward defendant. Suffice it to say that from this testimony it clearly appeared that defendant had been damaged by reason of Long's breach of the contract to which defendant had testified in an amount considerably in excess of the amount due on the $5,000 note sued for, and that owing to Long's failure to perform the contract on his part, the corporation had been deprived of large profits which it otherwise would have received and of which defendant was entitled to one-half. The issues of fact in this case were plain and simple and were submitted to the jury in an extremely clear and impartial charge by the justice presiding at the trial.

The main ground of the appeal urged by plaintiff's counsel was that the arrangement to which defendant had testified could not result in any benefit to the individual defendant, but if there was any cause of action it was in behalf of the corporation. At the close of the trial, counsel for plaintiff stated:

" Mr. Ufford: I respectfully except to your Honor's leaving to the jury any question of the profits Long made in that business in this action and I request your Honor to charge the jury that Margolis cannot recover in this action nor use as an offset in this action any profits that were made by Long in that business but that they belong to the corporation. * * *

" Mr. Ufford: I request the Court to charge the jury that whatever profits Long made in that business belonged to the corporation and that it must be presumed that they will be recovered in the

action of Mr. Margolis as a director, in the action in the Federal Court.

"The Court: It is true. I have already charged the jury that while the corporation may have the right to compel a director to return those profits, the Court charges the jury as well *that Margolis as an individual has a right to compel Long to reimburse him individually for the breach of his agreement to turn over all his business to the corporation.*

"Mr. Ufford: I respectfully except to your Honor's charge and I respectfully request the Court to charge that when Mr. Margolis recovers, if ever, in the Federal Court, the profits that belong to the corporation, then the proceeds of that recovery in the Federal Court, coming into the treasury of the corporation, *will fully recompense Mr. Margolis for any loss that he has sustained."* (Italics mine.)

In the court's charge the jury was instructed as follows: "It is claimed by the defendant that he has suffered seriously in connection with loss of dividends and profits and because of the loss in these dividends and profits that the corporation would have obtained if Long had turned over all of the business to the corporation, *his stock has thereby depreciated in value and he says that those acts of Long have caused him damage in that connection, namely, they have deprived this corporation of all the profits that it would have made, if Long had turned over all the business that he had, in the 13 months of the corporate existence of the Long-Margolis Lumber Co. and he would have had what dividends would accrue to him as a stockholder in the corporation."* (Italics mine.)

I think such instructions by the court were entirely proper, under the circumstances.

There can be no question that defendant was personally damaged as the result of Long's breach of the contract with him, and it seems to me was entirely justified in offsetting such damages against the personal claim of plaintiff, as assignee of Long. By the verdict the jury found with the defendant that the contract had been made and that Long had breached the same. The jury also found that as the result of such breach the defendant's stock had depreciated in value at least to the amount of the plaintiff's claim upon the note. Therefore, the only real question to be determined was as to whether or not the defendant might offset the depreciated value of his stock in the corporation, or, what is equivalent, his loss of profits, as against a personal obligation. I think the authorities fully support the defendant's contention as to his right to make such setoff. Mr. Justice TAFT, when presiding in the Federal Circuit Court of Appeals, stated in the case of *Ritchie* v. *McMullen* (79

Fed. 522, 533) as follows: "It is undoubtedly true, as the Circuit Court held, that a stockholder, merely as such, cannot have an action in his own behalf against one who has injured the corporation, however much the wrongful acts have depreciated the value of his shares [citing cases]. But we are of opinion that this principle has no application where the wrongful acts are not only wrongs against the corporation, but are also violations by the wrongdoer of a duty arising from contract or otherwise, and owing directly by him to the stockholders."

While it is undoubtedly true that a director of a corporation under such circumstances would be justified in bringing an action for the benefit of his corporation, it is, nevertheless, true that an individual director may sue for damages which he was individually caused by the breach of contract of his coadventurer. As was said by Judge CARDOZO in *General Rubber Co.* v. *Benedict* (215 N. Y. 18), which was an action brought by a stockholder against one who was a director of the corporation: "We think the wrong to the plaintiff does not cease to be remediable because it may also be a wrong to someone else."

The same principle of law was applied by this court in the case of *Higgins* v. *Applebaum* (186 App. Div. 682). In that case the basis of recovery was the loss of profits. Plaintiff there and the two defendants, Applebaum and Stark, had agreed to form a corporation for the sale of Chevrolet automobiles with a capital stock of $15,000 to be divided equally between them. Pursuant to such agreement a corporation was formed and the stock issued. Plaintiff contributed his $500, but the defendants failed to pay as had been agreed. This court, by Mr. Justice WALTER LLOYD SMITH writing in that case, stated (at p. 684): "The plaintiff claims that as a result of the contract with the defendants he has been deprived of the dealer's contract, his contribution of $500 towards the capital stock, his salary of $50 a week from the company, and lastly, his prospective profits that his shares would have earned for him.

"These facts were all conceded to be true for the purposes of this action and the trial court held that upon them the plaintiff was entitled only to nominal damages.

"This plaintiff in another action has sued the defendants under sections 90 and 91 [now 60 and 61] of the General Corporation Law [citation], to compel them to account for their official conduct in the management and disposition of the company's property. Upon an appeal to this court we held that the complaint stated a cause of action [citation]. But that action was an entirely different action from the one now sought to be maintained, and a

recovery therein would be in behalf of the corporation and rests upon entirely different principles. * * *

" Where, however, the value of his stock has been depreciated by the failure of his co-contractor to furnish moneys needed by the corporation which he has stipulated with plaintiff to advance, then the damage is directly traceable to his breach of contract and for that damage he may be held individually liable to the stockholder whose stock has been thus depreciated. * * *

" The failure of the defendants Applebaum and Stark to fulfill their agreements and pay over to the corporation the amounts which they agreed to pay constitutes a breach of their contract with the plaintiff."

I think, therefore, this court, by such decision is bound, and that the recovery by the defendant must be upheld. In *Eden* v. *Miller* (37 F. [2d] 8), Judge CHASE writing, said: " * * * We find nothing but a promise made by the defendant directly to the plaintiffs to provide a third party (the corporation to be organized by the plaintiffs) with a definite sum of money to use in doing its business, and to perform certain services for it, all in consideration of the promise of the plaintiffs, made directly to the defendant, that they would organize the corporation, provide it with a certain sum of money or its equivalent with which to do business, and to perform services for it."

In that case the court held that it was immaterial to plaintiffs' right of recovery that the corporation itself also had a right of action, and in this respect Judge CHASE's opinion is as follows: " For such damage as they can prove, they may recover, regardless of any cause of action the corporation may have against the defendant."

Several errors are claimed by appellant with reference to the manner in which the court submitted the case to the jury, particularly upon the question of the profits which would have been earned had Long turned over his entire business to the company. The evidence shows that the profits which the corporation would have received had the business been turned over would be from $15,000 to $80,000. Taking the least figure, the defendant would have been entitled from this profit to receive at least $7,500, a sum entirely sufficient to wipe out the note in suit. I think the court correctly charged the jury as follows: " In addition thereto I will allow the jury to consider all the evidence in the case on the question as to the depreciation in the value of the stock or rather the claim by the defendant Margolis that his stock as an investment of $5,000 in the stock of this corporation has been rendered valueless."

I think the evidence in this case was overwhelmingly with defendant, and that the defendant was clearly double-crossed by his coadventurer, Long, and his wife. I find no reversible error during the progress of the trial or in submitting the issues to the jury. The case was carefully tried, and the justice presiding at the trial submitted the issues in a clear and fair charge.

The verdict of the jury should not be disturbed, and the judgment and order appealed from should be affirmed, with costs to defendant, respondent, against plaintiff, appellant.

Judgment and order so far as appealed from reversed, the action severed and a new trial ordered as to the second cause of action and the counterclaim, with costs to the appellant to abide the event.