GEORGE CAMPBELL PAINTING CORP. *v.*
REID ᴇᴛ ᴀʟ., MEMBERS OF NEW YORK
CITY HOUSING AUTHORITY, ᴇᴛ ᴀʟ.

No. 673.   Argued April 30, 1968.—Decided June 10, 1968.

*Albert A. Blinder* argued the cause for appellant. With him on the briefs were *Theodore M. Ruzow* and *Stephen Hochhauser.*

*Paul W. Hessel* argued the cause for appellee New York City Housing Authority. With him on the brief were *Harry Levy* and *I. Stanley Stein. Samuel A. Hirshowitz,* First Assistant Attorney General of New York, argued the cause for appellee Attorney General of New York. With him on the brief were *Louis J. Lefkowitz,* Attorney General of New York, *pro se,* and *Brenda Soloff,* Assistant Attorney General.

MR. JUSTICE FORTAS delivered the opinion of the Court.

The Public Authorities Law of New York, § 2601, provides that a clause must be inserted in all contracts awarded by a public authority of the State for work or services to provide that upon refusal of "a person" to testify before a grand jury, to answer any relevant question, or to waive immunity against subsequent criminal prosecution, such person and any firm or corporation of which he is a member, officer, or director shall be disqualified for five years from contracting with any public authority, and any existing contracts may be canceled by the public authority without incurring any penalty or damages.[1]

During 1964, appellant, a closely held family corporation, entered into three painting contracts with appellee New York City Housing Authority. Each of these contained the standard disqualification clause. The contracts were executed by appellant's president, George Campbell, Jr., who was also a director and stockholder of the corporation.

Early in 1965, appellant became aware that the District Attorney of New York County was conducting an

---

[1] Section 2602 provides for disqualification on the same basis without reference to any contractual clause.

investigation before a grand jury of alleged bid rigging on public contracts, including those of appellant. Thereafter, George Campbell, Jr., resigned as appellant's president and director and divested himself of his stock. He remained in appellant's employ as an "estimator."

A few weeks thereafter, Campbell was subpoenaed to appear before the grand jury. He refused to sign the waiver of immunity. In due course, the Public Housing Authority notified appellant that, pursuant to the provision in its contracts, the contracts were terminated and Campbell and the corporation were disqualified from doing business with the Authority for five years.

After proceedings in the lower courts of New York, the New York Court of Appeals denied relief to appellant. It held that the disqualification was valid and that § 2601 of the Public Authorities Law is constitutional, citing *Gardner* v. *Broderick,* 20 N. Y. 2d 227, 229 N. E. 2d 184 (1967) (reversed this day, *ante,* p. 273). The Court of Appeals also rejected appellant's claim that it should not have been disqualified because Campbell resigned as president and director before he was called to testify.[2] We noted probable jurisdiction. 390 U. S. 918 (1968).

We do not consider the constitutionality of § 2601 of New York's Public Authorities Law or the validity or effect of the contract provisions incorporating that section. Appellant's claim is that these provisions operated unconstitutionally to require its president, Mr. Campbell, to waive the benefits of his privilege against self-incrimination. But appellant cannot avail itself of this point, assuming its validity. It has long been settled in federal jurisprudence that the constitutional privilege against self-incrimination is "essentially a personal one, applying only to natural individuals." It "cannot be utilized by

---

[2] The Court of Appeals noted that § 2603 of the Public Authorities Act vests the State Supreme Court with jurisdiction, for stated reasons, to remove the disqualification.

or on behalf of any organization, such as a corporation." *United States* v. *White,* 322 U. S. 694, 698, 699 (1944); see also *Essgee Co.* v. *United States,* 262 U. S. 151 (1923); *Baltimore & Ohio R. Co.* v. *ICC,* 221 U. S. 612, 622 (1911); *Wilson* v. *United States,* 221 U. S. 361, 382–385 (1911); *Hale* v. *Henkel,* 201 U. S. 43, 74–75 (1906). If a corporation cannot avail itself of the privilege against self-incrimination, it cannot take advantage of the claimed invalidity of a penalty imposed for refusal of an individual, its president, to waive the privilege. Since the privilege is not available to it, appellant, a corporation, cannot invoke the privilege to challenge the constitutionality of § 2601 of the Public Authorities Law. *A fortiori,* it cannot assail the validity of the provision in the contracts into which it entered, incorporating the substance of that section.

As to appellant's claim that its due process rights were denied by the imposition of the penalty despite Mr. Campbell's purported resignation from managerial positions, we do not reach the abstract legal question that is urged upon us. We see no reason to disturb the finding of the New York Court of Appeals that "the resignation was tendered and accepted solely for the purpose of avoiding the statutory disqualification," and the conclusion of that court that the purported resignation should be disregarded for purposes of this case.

*Affirmed.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK concurs, dissenting.

Appellant corporation has been disqualified as a contractor with the State of New York because its president, George Campbell, Jr., who was also a director and an owner of 10% of its stock, invoked the protection of the Self-Incrimination Clause of the Fifth Amendment when summoned before the grand jury. All other officers, di-

rectors, and the controlling stockholders of this closely held corporation appeared and indicated a willingness to sign waivers of immunity and to testify. The president, who invoked the Self-Incrimination Clause, resigned as officer and director and agreed to sell his 10% stock interest, though so far as appears the contract of sale has not been consummated.[1]

In the old days when a culprit, unpopular person, or suspect was punished by a bill of attainder, the penalty imposed often reached not only his own property, but also interests of his family.[2] When the present law blacklists this family corporation, it has a like impact.

I fail to see how any penalty—direct or collateral— can be imposed on anyone for invoking a constitutional guarantee. A corporation, to be sure, is not a beneficiary of the Self-Incrimination Clause, in the sense that it may invoke it. *United States* v. *White*, 322 U. S. 694. Yet placing this family corporation on the blacklist and

---

[1] One of the directors of the corporation testified before appellee New York City Housing Authority that no consideration was paid for the stock at the time of transfer, and that there was as yet no formal or informal agreement as to payment for the stock.

Moreover, the pleadings reveal that George Campbell, Jr., was at all times relevant here a 10% residuary legatee under the estate of his late father. That estate contained 50% of the stock of appellant corporation. Thus, George Campbell, Jr., possessed a substantial additional interest in the corporation which would likely be affected by any increase or decrease in the value of the stock.

[2] *E. g.*, Delaware Laws 1778, c. 29b; New Jersey, Act of Dec. 11, 1778, N. J. Rev. Laws 40 (Paterson ed. 1800). Compare North Carolina Laws, Session of April 14, 1778, c. 5, calling for confiscation of the estates of certain persons "inimical to the United States," but specifically providing that members of their families should be allowed that portion of the estate forfeited which they might have enjoyed had the owner died intestate. See also *Bayard* v. *Singleton*, 1 Martin's N. C. Rep. 42 (1787). And see Comment, The Supreme Court's Bill of Attainder Doctrine: A Need for Clarification, 54 Calif. L. Rev. 212, 214, 216 (1966).

disqualifying it from doing business with the State of New York is one way of reaching the economic interest of the recalcitrant president.[3] If, as I felt in *Spevack* v. *Klein*, 385 U. S. 511, placing the penalty of disbarment on a lawyer for invoking the Self-Incrimination Clause is unconstitutional, so is placing a monetary penalty on a businessman for doing the same.[4] Reducing the value of appellant corporation by putting it on the State's blacklist is a penalty which every stockholder suffers. If New York provided that where a businessman invokes the Self-Incrimination Clause of the Fifth Amendment

---

[3] Damage to shareholders which results indirectly from damage done to the corporation can, of course, be rectified through suit by the corporation itself or by a stockholder's derivative action. *E. g.*, *Paulson* v. *Margolis*, 234 App. Div. 496, 255 N. Y. S. 568 (Sup. Ct. 1932). See generally Ballantine, Corporations 333–339 (1946); 13 Fletcher Cyclopedia, Corporations §§ 5908–5911 (1961). There is no indication in the opinion of the New York Court of Appeals that that remedy is inappropriate on the facts of this case.

[4] The fact that appellant may petition the New York courts for discretionary relief under § 2603 of the New York Public Authorities Law does not cure the defect. For appellant's claim is that its disqualification was improper, and that it was penalized pursuant to an unconstitutional statute. Its remedy cannot be limited by § 2603, which was construed by the New York Court of Appeals below to grant the state courts discretion to afford relief from a proper disqualification when the application of the statute would cause an unnecessary hardship. Indeed, § 2603 by its terms does not even involve a review of the basis for the disqualification, but provides that any disqualified corporation may apply to the New York Supreme Court to discontinue the disqualification:

"Such application shall be in the form of a petition setting forth grounds, including that the cooperation by petitioner with the grand jury at the time of the refusal was such, and the amount and degree of control and financial interest, if any, in the petitioning firm, partnership or corporation by the member, partner, officer or director who refused to waive immunity is such that it will not be in the public interest to cancel or terminate petitioner's contracts or to continue the disqualification . . . ."

he shall forfeit, say, $10,000, the law would plainly be unconstitutional as exacting a penalty for asserting a constitutional privilege. What New York could not do directly, it may not do indirectly. Yet penalizing this man's family corporation for his assertion of immunity has precisely that effect.

The Supremacy Clause of the Constitution (Art. VI, cl. 2) gives the Fifth Amendment, now applicable to the States by reason of the Fourteenth, controlling authority over New York's law.