290 So.2d 79 (1974)
STATE of Florida, Appellant,
v.
William B. DAWSON, III, Appellee.
Nos. S-224-S-229.
District Court of Appeal of Florida, First District.
January 22, 1974.
As Amended on Denial of Rehearing February 28, 1974.
*80 Robert L. Shevin, Atty. Gen., and Michael M. Corin, Asst. Atty. Gen., for appellant.
William A. Hallowes, III, and Edward M. Booth, Jacksonville, for appellee.
DREW, E. HARRIS, Associate Judge.
William B. Dawson is a member of the Florida Bar. He practices law in Jacksonville under the name of Dawson and Hart, P.A., and was so engaged during all pertinent times in these proceedings. He is the owner of all the capital stock of said professional service corporation.[1] The corporation employed Gerald R. Hart, a lawyer; Rebecca Lea Salter, a secretary; and James R. Geiger, an accountant.
In 1971 the Grand Jury of Duval County returned four indictments against Dawson charging grand larceny against several insurance companies by fraudulent representations in the settlement of automobile accident claims of many of his clients. Four separate informations by the state's attorney were returned against Dawson. Some three weeks later four informations were filed against Dawson charging identical offenses as those alleged in the indictments.
While the grand jury investigation was underway, it issued witness subpoenas duces tecum to the employees aforesaid,[2] *81 each of whom had access to the office records and files of Dawson's practice. Such subpoenas required the employees to appear before the grand jury and bring with them certain records, etc., from defendant's law practice. Each employee, under protest, delivered the documents and records to the grand jury.
Subsequent to the delivery of the above documents and records to the grand jury, it returned two more indictments against Dawson charging grand larceny and other related offenses in connection with the settlement of automobile accident claims by various clients of Dawson. Thereafter, the state's attorney filed two additional and similar informations against Dawson.
Dawson, after amendments had been filed to the several indictments and informations, filed motions to dismiss all of them on the grounds of immunity, contending that all documents produced by the employees were personal to him and were files of his personal law practice and that he, through his employees, was compelled to produce evidence that incriminated him.[3]
The able trial judge assigned to the case held that Dawson was immune from prosecution under § 914.04, Florida Statutes,[4] and forever abated any further prosecution by the State. It is from this order that this appeal is prosecuted.[5]
The universal rule is that the privilege against self-incrimination applies only to natural individuals and cannot be utilized by or on behalf of a corporation.[6] The trial judge held that such rule was inapplicable to a professional service corporation under Chapter 621, Florida Statutes, F.S.A. With this holding we are in accord.
*82 A study of the background and history of the Professional Service Corporation Act of Florida establishes beyond doubt that it was enacted for the purpose of providing tax advantages to those in the learned professions that otherwise would be unavailable to them. It is also evident that everything essential was done by the legislature and the sponsors of such legislation to preserve the non-corporate status of the lawyer coming under its provisions and all the traditional and historic attorney-client responsibilities and privileges.[7] Specific provisions of the Act leave no question of this.[8]
We think the High Court envisioned the problem we are faced with here when, speaking through the late revered Mr. Justice Thornal in In Re: The Florida Bar, supra, it said:
"Traditionally, prohibition against the practice of a profession through the corporate entity has been grounded on the essentially personal relationship existing between the lawyer and his client, or the doctor and his patients. This necessary personal relationship imposes upon the lawyer a standard of duty and responsibility which does not apply in ordinary commercial relationship. The noncorporate status of the lawyer was deemed necessary in order to preserve to the client the benefits of a highly confidential relationship, based upon a personal confidence, ability, and integrity. If a means can be devised which preserves to the client and the public generally, all of the traditional obligations and responsibilities of the lawyer and at the same time enables the legal profession to obtain a benefit not otherwise available to it, we can find no objection to the proposal."
......
"On the contrary, because of the privilege that is being made available to lawyers of this State there will be increased responsibilities commensurate with the privilege."
Dawson, as we have heretofore noted, at all times argued that the documents and evidence required by the grand jury and delivered to it by his employees were personal to himself as a lawyer, practicing as a professional corporation pursuant to law. The privilege against self-incrimination is, indeed, undisputedly a personal one. It cannot be used by any organization or corporation, and the documents or other evidence which the immunity is designed to protect must be personal to those that claim that protection or at least in his possession in a purely personal capacity.[9]
The rule to govern "is whether one can fairly say under all the circumstances that a particular type of organization has a character so impersonal in the scope of its membership and activities that it cannot be said to embody or represent the purely private or personal interest of its constituents, but rather to embody their common or group interest only."[10]
We think there is no difference whatever in compelling a man to be a witness *83 against himself and in seizing his records to be used against him. They are both constitutionally protected rights.[11] It is the use of the power of the sovereign through its courts to compel or seize evidence against an accused over his objection that the framers of our constitution sought to protect. The wisdom of this is forcefully demonstrated by current events. A great and abiding duty rests on those vested with sovereign powers to scrupulously follow the law which they are trusted to enforce. Nothing less should be tolerated, and none know better what the law does require.
That these documents so seized by the coercion of the grand jury were personal to Dawson cannot be doubted. That they were used for the purpose of securing indictments and informations against him is unquestioned. Their use, therefore, in these criminal cases are prohibited by the immunity statute.
Our attention has been called to the case, In Re: Brian W. Bublick, Case No. 72-1739, U.S. Court of Appeals, 7th District Chicago, Opinion filed September 8, 1972, not reported, involving the production of records by an attorney practicing as a professional service corporation under the Illinois law. In this case, the court refused to quash the subpoena requiring the production of such records. This case is not controlling for several reasons; the principal one being set forth in that court's opinion thusly:
"The sole issue which is properly before us in this appeal is whether the privilege against self incrimination applies to the records of an individual lawyer practicing as a professional service corporation under the Illinois Professional Service Corporation Act. No question of the attorney-client privilege is involved."
Moreover, the history of the Illinois Act and its specific provisions which might bear on that court's view are not before us, and even if they were and even if the Illinois Federal Court was to reach a conclusion contrary to ours, which it obviously has not done and which we doubt it would do, we would not be persuaded by it because of our firm conviction that basic constitutional rights would be violated.
We do not here say that every record or document in the possession of a lawyer is immune from seizure. We do say and hold that the records seized here concerning confidential attorney-client relations are protected, and that the trial judge properly quashed the various charges and abated the action.
Affirmed.
RAWLS, C.J., and WIGGINTON (Ret.), J., concur.
NOTES
[1] Organized pursuant to The Professional Services Corporation Act, Chapter 621, Florida Statutes, F.S.A.
[2] The pertinent portions of said subpoenas are:

As to Gerald R. Hart: "All cancelled checks payable to Dr. Archie T. Frazier, Dr. Robert S. Nash, Dr. Edgar F. Merchant, Dr. Kenneth O. Weidler and Dr. Carl R. Rosseland on the bank account of DAWSON AND HART, P.A. at First Bank and Trust Company, Jacksonville, Florida, said checks bearing the dates January 1, 1969 through February 28, 1971, ..."
As to Rebecca Lea Salter: "Copies of checks payable to Dr. Archie T. Frazier on the bank account of DAWSON AND HART, P.A. at the First Bank and Trust Company, Jacksonville, Florida, said checks bearing the dates January 1, 1970, through February 28, 1971
and
Statements, or copies thereof if originals unavailable, showing charges for professional services by Dr. Archie T. Frazier rendered to the persons whose names appear on the list attached hereto for injuries purportedly received in automobile accidents
and
Closing statements or copies thereof if originals unavailable, showing sums withheld for Dr. Archie T. Frazier from insurance company drafts with respect to automobile accident liability claims of the persons whose names appear on the aforesaid list attached hereto
and
Ledger cards or sheets on each of the persons whose names appear on the aforesaid list attached hereto showing debit and credit entries... ." [Note: The list attached contains the names of 218 individual clients of Dawson.]
As to James R. Geiger: "... [B]ring with you any and all books, records, journals, ledgers and other papers and documents within your possession, custody or control pertaining to DAWSON AND HART, P.A., a professional service corporation... ."
[3] Immunity was claimed under Sec. 914.04, Florida Statutes, F.S.A. (formerly Sec. 932.29 as amended). The motion also alleged the trial court was without jurisdiction to prosecute him under said charges and that to do so would violate his rights under the Declaration of Rights of the Florida Constitution and Amendments to the United States Constitution.
[4] "Witnesses; person not excused from testifying in certain prosecutions on ground testimony might incriminate him; immunity from prosecution.  A person shall not be excused from testifying or producing documentary evidence in a proceeding for a violation of any of the criminal statutes of this state on the ground that the testimony or evidence might tend to show him guilty of a crime or subject him to a penalty, but the testimony or evidence shall not be used to establish his guilt of a crime or subject him to a penalty. This section shall not apply to any person giving any testimony or producing any book, papers, or other document unless such person does so upon the demand of the prosecuting attorney having jurisdiction to prosecute for the violation of the criminal statute involved upon the investigation, proceeding, or trial at which the testimony is given or the documentary evidence produced."

Note: The above is the verbiage of the Florida Immunity Statute in effect from January 1, 1971, to June 2, 1971, the period during which the subject subpoenas were issued and which controls here.
[5] See Florida Statute 924.07(1) F.S.A., Florida Statute 59.06(5)(b) F.S.A., and F.A.R. 6.3, 32 F.S.A.
[6] Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); George Campbell Painting Corp. v. Reid, 392 U.S. 286, 88 S.Ct. 1978, 20 L.Ed.2d 1094 (1968); United States v. Kordel, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970); Commercial Bank in Panama City v. Atlanta and St. Andrews Bay Ry. Co., 120 Fla. 167, 162 So. 512 (1935); Vann v. State, 85 So.2d 133 (Fla. 1956); Fineberg v. United States, 393 F.2d 417 (9th Cir.1968); United States v. Bell, 448 F.2d 40 (9th Cir.1971); United States v. Shlom, 420 F.2d 263 (2nd Cir.1969); United States v. Robbins, 337 F. Supp. 1050 (D.C.Ohio 1972); In Re: Lukich, 335 F. Supp. 557 (D.C.Ohio 1971); and Application of Weiss, 283 F. Supp. 97 (D.C.N.Y. 1968).
[7] (a) A corporation cannot practice a profession, Matter of Co-Operative Law Co., 198 N.Y. 479, 92 N.E. 15 (1910); (b) Laymen may not practice law; (c) Corporate entities cannot comply with licensing and ethical standards; (d) The lawyer-client relationship would be destroyed by profit-minded stockholders.
[8] (a) Stock may be transferred in such professional service corporation only to a lawyer and then only with the consent of the remaining stockholders; (b) All directors are required to be lawyers admitted to practice in Florida; (c) Only stockholders may be executive officers. See In Re: The Florida Bar, 133 So.2d 554 (Fla. 1961). See also 36 The Florida Bar Journal, pp. 16-20 (1962).
[9] Boyd v. United States, 116 U.S. 616, 29 L.Ed. 746, 6 S.Ct. 524 (1886).
[10] United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); compare In Re: Subpoena Duces Tecum, 81 F. Supp. 418. United States v. Cogan, 257 F. Supp. 170 (1966).
[11] Boyd v. United States, supra.