UNITED STATES of America,
Plaintiff-Appellee,

v.

CHERAMIE BO–TRUC # 5, INC., and
Cheramie Bo-Truc # 7, Inc.,
Defendants-Appellants.

No. 74–2790.

United States Court of Appeals,
Fifth Circuit.

Sept. 13, 1976.

William A. Porteous, III, New Orleans, La., for defendants-appellants.

Gerald J. Gallinghouse, U. S. Atty., Leonard P. Avery, Asst. U. S. Atty., New Orleans, La., Allen VanEmmerik, Admiralty & Shipping Sec., Dept. of Justice, Leonard Schaitman, Paul Blankenstein, Attys., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before TUTTLE and GEE, Circuit Judges.*

GEE, Circuit Judge:

Appellants, each of which submitted mandatory reports to the Coast Guard after a vessel belonging to it was involved in a disaster at sea, appeal from the lower court's imposition of fines proposed by the Coast Guard for violations of 46 U.S.C. § 222 (1970),[1] which provides penalties for failure to man vessels at specified levels. Appellants challenge the Coast Guard's use of the statutorily-required report as the basis for imposition of a fine, the scope of section 222's coverage, the Coast Guard's power to collect fines, and the failure to hold an administrative hearing. Finding merit in appellants' objection to the lack of a hearing, but in it only, we reverse.

First, appellants argue that the proceedings to collect the fines violated their privilege against self-incrimination because the Coast Guard based its case against them on accident reports that Coast Guard regulations issued under 46 U.S.C. § 239(a) (1970) required them to file. But corporations have no constitutional privilege against self-incrimination. *California Bankers Association v. Shultz,* 416 U.S. 21, 55, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974); *George Campbell Painting Corp. v. Reid,* 392 U.S. 286, 88 S.Ct. 1978, 20 L.Ed.2d 1094 (1968).[2]

---

* This case has been decided by a quorum of the court. *See* 28 U.S.C. § 46.

1. Which reads in pertinent part:

   No vessel of the United States subject to the provisions of title 52 of the Revised Statutes or to the inspection laws of the United States shall be navigated unless she shall have in her service and on board such complement of licensed officers and crew including certificated lifeboat men, separately stated, as may in the judgment of the Coast Guard be necessary for her safe navigation.

   . . .

   If any such vessel is deprived of the services of any number of the crew including certificated lifeboat men, separately stated, without the consent, fault, or collusion of the master, owner, or any person interested in the vessel, the vessel may proceed on her voyage if, in the judgment of the master, she is sufficiently manned for such voyage: *Pro-*

   *vided,* That the master shall ship, if obtainable, a number equal to the number of those whose services he has been deprived of by desertion or casualty, who must be of the same grade or of a higher rating with those whose places they fill. If the master shall fail to explain in writing the cause of such deficiency in the crew including certificated lifeboat men, separately stated, to the Coast Guard within twelve hours of the time of the arrival of the vessel at her destination, he shall be liable to a penalty of $50. If the vessel shall not be manned as provided in this section, the owner shall be liable to a penalty of $100, or in case of an insufficient number of licensed officers to a penalty of $500.

2. Thus, we need not decide appellants' claim that the penalties here at issue are criminal in nature, a determination that would be prerequisite to finding a violation of the self-incrimina-

■ Second, appellants argue that section 222 does not apply to the vessels because the statute is not included in the list of six officer-licensing statutes enumerated in 46 U.S.C. § 405 (1970), which governs the licensing of tug and freight boats and provides that "the officers navigating such vessels shall be licensed in conformity with the provisions of sections 214, 224, 226, 228, 229, and 230 of this title . . .." But as the district court correctly noted, section 222 concerns manning, not licensing, and there was thus no reason to mention it in section 405. And section 222 by its terms applies to every vessel subject to the provisions of Coast Guard licensing and inspection statutes, which these two vessels are under by virtue of 46 U.S.C. § 404 (1970) (all vessels exceeding fifteen gross tons that carry freight for hire are subject to all statutory inspection requirements).

■ Third, appellants argue that the Coast Guard has no statutory authority to collect fines. But the Coast Guard only assessed the fines; the Attorney General is the one here attempting to collect them. Therefore, we consider this argument frivolous.

■ Finally, appellants claim that the Coast Guard violated their due-process rights, their rights under the Administrative Procedure Act (APA), 5 U.S.C. § 500 et seq. (1970), and their statutory rights under 46 U.S.C. § 239(d) (1970), by fining them for the section 222 violations without fulfilling section 239(d)'s hearing requirement. Section 239(d) provides:

> (d) All acts in violation of any of the provisions of title 52 [includes section 222] . . . shall be immediately investigated as provided in subsections (a) and (b) of this section [which require the Coast Guard Commandant to establish rules for such investigations] . . . . In all investigations conducted under the authority of this section, any owner . . . shall be allowed to be represented by

counsel, to cross-examine witnesses, and to call witnesses in his own behalf, and a full and complete record of the facts and circumstances shall be submitted to the Commandant of the Coast Guard.

The government responds that section 239's requirements do not apply to section 222 violations because 239 applies only to investigations of marine casualties and proceedings to revoke or suspend marine licenses. But this argument fails because section 239(d) applies to violations "of any of the provisions of title 52. . . ." The government further insists that although the APA requires the holding of an administrative hearing in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing, 5 U.S.C. § 554 (1970), no hearing was required because no facts were in dispute. We disagree. A long line of cases establishes the rule that even when a statute mandates an adjudicatory proceeding, neither that statute, nor due process, nor the APA requires an agency to conduct a meaningless evidentiary hearing when the facts are undisputed. *See, e. g., Independent Bankers Association v. Board of Governors,* 170 U.S.App.D.C. 278, 516 F.2d 1206, 1220 & n. 57 (1975) (discussing cases); *Appalachian Power Co. v. EPA,* 477 F.2d 495, 501 (4th Cir. 1973); *United States v. Consolidated Mines & Smelting Co.,* 455 F.2d 432, 453 (9th Cir. 1971) (citing cases). *See also FPC v. Texaco,* 377 U.S. 33, 39–44, 84 S.Ct. 1105, 12 L.Ed.2d 112 (1964); *Sun Oil Co. v. FPC,* 256 F.2d 233, 240–41 (5th Cir.), *cert. denied,* 358 U.S. 872, 79 S.Ct. 111, 3 L.Ed.2d 103 (1958). But all these cases concern either statutes that do not clearly require a hearing before the agency action in question, statutes whose wording and legislative history condition a hearing on a preliminary showing of a disputed issue of fact, or at minimum agencies that have exercised their rulemaking powers to establish statutorily-permitted threshold prerequisites to a hearing. We refuse to extend their rule to this

tion privilege. *Compare United States v. LeBeouf Bros. Towing Co., Inc.,* 537 F.2d 149, at 151 n. 7 (5th Cir., 1976).

case, one where the agency summarily disregarded a controlling statute that clearly mandates a hearing.[3] The government insists that a hearing is nonetheless not required where *de novo* judicial review is available, citing two old Supreme Court cases.[4] We need not consider whether this is so because the judicial review available in any case reviewed on the record of an agency hearing provided by statute is not *de novo*; it is limited to determining whether the agency's findings are supported by substantial evidence. 5 U.S.C. § 706(2)(E) (1970). The APA provides that reviewing courts should invalidate any findings "unwarranted by the facts to the extent that the facts are subject to trial *de novo*." *Id.* § 706(2)(F). Relying on the House hearings explaining this section, the Supreme Court in *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), pointed out that trial *de novo* is appropriate in only two situations, the only relevant one here being when agency factfinding procedures in an adjudicatory proceeding are inadequate.[5] *See also Camp v. Pitts,* 411 U.S. 138, 141–42, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) (per curiam). The House hearings relied on by the *Overton Park* court make clear that *de novo* review is not available when the relevant statute requires that an order be issued only after an administrative hearing. *See* H.R.Rep.No.1980, 79th Cong., 2d Sess. 45–46 (1946). While no administrative hearing was held here, one was required, and thus section 706(2)(F) does not apply. Since the Coast Guard did not hold the required hearing before finding appellants guilty of a violation, the fine cannot stand, and the judgment below must be reversed, without prejudice to the Coast Guard's right to conduct a proper administrative hearing should it so desire.

REVERSED.

---

3. If the party held in violation conceded prior to the administrative ruling that there were no facts in dispute, we might be prepared to find a waiver of the hearing requirement. No such admission occurred here, however. The parties stipulated in a pretrial order in the court below that "[t]here are no contested issues of fact," but appellees' failure to contest facts at the judicial review level cannot be interpreted as a concession that they would not have attempted to raise fact issues at the administrative level.

4. *Nickey v. Mississippi,* 292 U.S. 393, 396, 54 S.Ct. 743, 78 L.Ed. 1323 (1934); *Hagar v. Reclamation Dist. No. 108,* 111 U.S. 701, 710–12, 4 S.Ct. 663, 28 L.Ed. 569 (1884).

5. The other being when judicial proceedings are brought to enforce certain administrative actions not here involved.