**UNITED STATES of America, Plaintiff,**

v.

**The TEXAS PIPE LINE COMPANY, Defendant.**

No. 77–83–C.

United States District Court,
E. D. Oklahoma.

Feb. 17, 1978.

John Osgood, Asst. U. S. Atty., Muskogee, Okl., for plaintiff.

Jack Short, Tulsa, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

This is an action by the Plaintiff to collect a penalty assessed against Defendant for discharging a harmful quantity of oil into an unnamed tributary of Caney Creek in Atoka County, Oklahoma, in violation of § 311(b)(3) of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1321(b)(3). It is asserted that the Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1345 and 1355.[1]

---

1. 28 U.S.C. § 1345 provides that the United States District Courts shall have original jurisdiction of all actions commenced by the United States while § 1355 gives the federal district courts exclusive jurisdiction of actions to recover or enforce any fine, penalty or forfeiture incurred under any Act of Congress. Furthermore, 33 U.S.C. § 1321(n) vests the United States District Courts "with jurisdiction for any actions, other than actions pursuant to subsection (i)(1) of this section, arising under this section."

From the record before the Court in this case, it appears without dispute that a crude oil pipeline owned by Defendant was damaged on May 12, 1975, by a bulldozer operating on the land covering the pipeline and six hundred barrels of oil were spilled, of which five hundred seventy-five barrels entered the unnamed tributary of Caney Creek. Immediately upon receiving notification of the break in its pipeline and the escape of the oil into the tributary, Defendant notified the appropriate governmental agencies and began recovery operations. Defendant was able to recover about five hundred ten barrels of the spilled oil. The United States Environmental Protection Agency (EPA) referred this matter to a Coast Guard Hearing Officer and Defendant was subsequently notified of the reported violation and applicable provisions of the Federal Water Pollution Control Act (FWPCA) and was offered the opportunity for a hearing at which Defendant could be represented by counsel. However, Defendant chose to submit written material in lieu of a hearing.[2] On May 17, 1976, the Hearing Officer issued his decision which assessed a penalty of $2,500 against Defendant and this penalty was upheld upon administrative appeal. Defendant did not pay the penalty and Plaintiff brought this action seeking a judgment in the amount of $2,500.

Pursuant to Rule 56, Federal Rules of Civil Procedure, Plaintiff has filed herein a Motion for Summary Judgment as to liability and a Brief in support thereof. Defendant has filed a Motion to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, and an alternative Motion for Summary Judgment pursuant to Rule 56, *supra*. Said Motions are supported by a Brief and Plaintiff has filed a Brief in opposition thereto.

In support of its Motion for Summary Judgment, Plaintiff contends that in an action for collection of a civil penalty assessed pursuant to 33 U.S.C. § 1321(b)(6), the matter is subject to de novo review under 5 U.S.C. § 706(2)(F) as to both liability and the size of the penalty; that summary judgment is appropriate in this case on the issue of Defendant's liability for a penalty as there are only questions of law to be decided concerning this issue; that the oil discharge in this case was into water subject to the FWPCA; that the penalty system established by 33 U.S.C. § 1321(b)(6) is based on strict liability with no exception insofar as liability for civil penalties is concerned for those cases caused by third persons; that third party causation is one factor to be considered in determining the size of the penalty; and that the Hearing Officer considered all of the relevant facts before him and properly applied the facts and law in reaching a penalty level which reflected all of the evidence.

In support of its Motion to Dismiss, Defendant contends that the Court's review in this case should be limited to the administrative record under 5 U.S.C. § 706(2)(C) and not a trial de novo; that there was no discharge of oil into "navigable waters of the United States" within the meaning of the FWPCA; that the penalty involved in this case is criminal in nature so that the reporting provisions of the FWPCA absolve Defendant of liability; that if there has been a technical violation of the FWPCA, the penalty assessed is excessive; and that as the spill in this case was caused by the act of a third party, nothing more than a token penalty is proper.

## JURISDICTIONAL ISSUE

■ 33 U.S.C. § 1321(b)(3) prohibits the discharge of oil into "the navigable waters of the United States" in "harmful quantities" as determined by the President under 33 U.S.C. § 1321(b)(4). Pursuant to § 1321(b)(4), 40 C.F.R. § 110.4 was enacted and provides that a "harmful quantity" of oil is one which violates the applicable

---

**2.** At page 2 of its Brief in support of its Motion to Dismiss, Defendant concedes that it was given notice and an opportunity to be heard and that the proceeding before the Hearing Officer was conducted in accordance with the requirements of the applicable statutes and regulations.

water quality standards of the United States, causes a film or sheen upon or discoloration of the surface water or adjoining shorelines, or causes a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines. 33 U.S.C. § 1362(7) defines "navigable waters" as "the waters of the United States, including the territorial seas." 33 U.S.C. § 1321(b)(6)[3] establishes penalties for violations of § 1321(b)(3) and the United States Coast Guard is charged with the execution of the provisions of § 1321(b)(6).

In the instant case, the oil discharge at issue was into an unnamed tributary of Caney Creek, which joins Clear Boggy Creek, which drains into the Red River, a navigable stream. There is evidence in the record before the Court and the parties do not dispute that the unnamed tributary was flowing a small amount of water at the time the discharge occurred. The record does not establish whether Caney Creek, Clear Boggy Creek or the Red River were flowing at the time of the spill. Defendant contends that in order for the Coast Guard to have jurisdiction over the oil discharge in this case, a showing that the unnamed tributary was flowing into Caney Creek and that Caney Creek was flowing into Clear Boggy Creek and that Clear Boggy Creek was flowing into the Red River at the time of the spill was required. In the legislative history of the FWPCA Amendments of 1972, Congress noted that "[w]ater moves in hydrologic cycles and it is essential that discharge of pollutants be controlled at the source." S.Rep.No.92–414, 92d Cong., 2d Sess. (1972), reprinted in [1972] U.S.Code Cong. & Ad.News 3668 at 3742. Accordingly, Congress intended that said Amendments apply "to the navigable waters, portions thereof, and their tributaries." Id. at 3743; see United States v. Ashland Oil and Transportation Co., 504 F.2d 1317 (Sixth Cir. 1974). In view of the foregoing, the Court is of the opinion that the FWPCA Amendments of 1972 are applicable to the tributaries of navigable waters and this is so regardless of whether there is a continuous flow of water from the point of an oil spill, through any intermediate tributaries and eventually into navigable waters at the specific time of an oil spill. Water was flowing in the unnamed tributary at the time of the spill involved in this case, the unnamed tributary was a part of an overall tributary of the Red River, a navigable river, was clearly one of "the waters of the United States" within the meaning of § 1362(7) and was therefore one of the "navigable waters of the United States" under § 1321(b)(3). Thus, the Coast Guard's decision in this case finding Defendant had violated § 1321(b)(3) was not void for lack of jurisdiction and Defendant's contention that the Court lacks subject matter jurisdiction over this action is without merit. Accordingly, Defendant's Motion to Dismiss should be overruled.

## SCOPE OF JUDICIAL REVIEW

The imposition of a penalty under 33 U.S.C. § 1321(b)(6) is subject to judicial review in a proceeding for judicial enforcement. 5 U.S.C. § 703; United States v. Atlantic Richfield Co., 429 F.Supp. 830 (E.D.Pa.1977). As mentioned previously, Plaintiff contends that the administrative decision in this case is subject to de novo review under 5 U.S.C. § 706(2)(F), whereas, Defendant asserts that judicial review is limited to the administrative record under 5 U.S.C. § 706(2)(C).

---

**3.** 33 U.S.C. § 1321(b)(6) provides in part as follows:

"Any owner or operator of any vessel, onshore facility, or offshore facility from which oil or a hazardous substance is discharged in violation of paragraph (3) of this subsection shall be assessed a civil penalty by the Secretary of the department in which the Coast Guard is operating of not more than $5,000 for each offense. No penalty shall be assessed unless the owner or operator charged shall have been given notice and opportunity for a hearing on such charge. Each violation is a separate offense. Any such civil penalty may be compromised by such Secretary. In determining the amount of the penalty, or the amount agreed upon in compromise, the appropriateness of such penalty to the size of the business of the owner or operator charged, the effect on the owner or operator's ability to continue in business, and the gravity of the violation, shall be considered by such Secretary."

■■ In reviewing an administrative decision under 5 U.S.C. § 706, a court must:

"(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

. . . .

(F) unwarranted by the facts to the extent that the facts are subject to a trial de novo by the reviewing court."

Relying on the House hearings explaining the above section, the Supreme Court pointed out in *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), that de novo review under § 706(2)(F) is appropriate in only two situations: (1) where there are inadequate factfinding procedures in an adjudicatory proceeding; and (2) where issues that were not before the agency were raised in a proceeding to enforce nonadjudicatory agency action. *See also Camp v. Pitts,* 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). In this regard, it has been noted that a penalty assessment under 33 U.S.C. § 1321(b)(6) "would never be appropriate for *de novo* review because the statute mandates adequate factfinding procedures."[4] *United States v. Atlantic Richfield Co., supra* at 835, n. 8; *see United States v. Independent Bulk Transport, Inc.,* 394 F.Supp. 1319 at 1323, n. 8 (S.D.N.Y. 1975). Furthermore, this case does not come within the second situation listed above as the instant case is a proceeding to enforce adjudicatory rather than nonadjudicatory agency action. Moreover, the House hearings relied on by the Supreme Court in *Overton Park* make clear that de novo review is not available when the relevant statute requires that an order be issued only after an administrative hearing. *United States v. Cheramie Bo-Truc # 5, Inc.,* 538 F.2d 696 (Fifth Cir. 1976); *see United States v. Independent Bulk Transport, Inc., supra*; H.R.Rep.No.1980, 79th Cong., 2d Sess. 45–46 (1946). 33 U.S.C. § 1321(b)(6) states that "[n]o penalty shall be assessed unless the owner or operator charged shall have been given notice and opportunity for a hearing on such charge." Therefore, the Court finds and concludes that 5 U.S.C. § 706(2)(F) does not apply in the instant case and judicial review of the administrative decision herein is limited to the administrative record. *See United States v. Atlantic Richfield Co., supra.* The judicial review available in any case reviewed on the record of an agency hearing provided by statute is limited to determining whether the agency's findings are supported by substantial evidence. 5 U.S.C. § 706(2)(E); *United States v. Cheramie Bo-Truc # 5, Inc., supra; see United States v. Atlantic Richfield Co., supra.*

■ "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. *Consolo v. Federal Maritime Commission, supra; NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660 (1939). This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. *Illinois Central Railroad Co. v. Norfolk & Western Railway Co.,* 385 U.S. 57, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966); *Consolo v. Federal Maritime Commission, supra; NLRB v. Nevada Consolidated Copper Corp.,* 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305 (1942).

■ In connection with its Motion for Summary Judgment in this case, Plaintiff has submitted an affidavit of the Hearing

---

**4.** In view of the factual information developed in this case by the Coast Guard through various investigations and reports and from the material submitted by Defendant in lieu of the hearing required under 33 U.S.C. § 1321(b)(6), the Court is not persuaded that the Coast Guard's lack of subpoena power constitutes this an inadequate factfinding procedure as Plaintiff contends.

Officer wherein he explains and justifies his decision assessing the penalty against Defendant. Attached to this affidavit are "copies or originals of files" maintained by the Hearing Officer and acknowledged by Defendant to be the entire administrative record in this case. However, where judicial review is confined to the agency record or such portions of it which the parties may cite, additional evidence is not to be admitted. *Roberts v. Morton*, 549 F.2d 158 (Tenth Cir. 1977). The integrity of the administrative process must be judged by what took place in the administrative proceedings as reflected on the administrative record unaided by affidavit proof in the reviewing court. *Garvey v. Freeman*, 397 F.2d 600 (Tenth Cir. 1968). Therefore, the Court will not consider the Hearing Officer's affidavit and will only examine the record upon which the final administrative decision in this case is based. The Defendant has acknowledged that the administrative record in this matter is before the Court in this proceeding.

## DEFENDANT'S LIABILITY UNDER THE FWPCA

■■■ 33 U.S.C. § 1321(b)(5) requires the person in charge of any facility violating § 1321(b)(3) to report any discharge to the appropriate government agency or face criminal sanctions. Notification received or information obtained under § 1321(b)(5) may not be used against such person "in any criminal case, except a prosecution for perjury or for giving a false statement." Defendant contends that as the penalty imposed by § 1321(b)(6) is criminal in nature, Defendant's reporting of the oil discharge in this case to the proper agency as required by § 1321(b)(5) invoked Defendant's constitutional protection against self-incrimination and absolved Defendant from liability for the penalty imposed under § 1321(b)(6). In *Ward v. Coleman*, 423 F.Supp. 1352 (W.D.Okla.1976), Judge Eubanks of this Court determined that the penalty provided by § 1321(b)(6) is civil in nature and that the self-reporting provision of § 1321(b)(5) is not violative of the protection against self-incrimination afforded by the Fifth Amendment to the United States Constitution. The Court adopts this position herein. Furthermore, as Defendant is a corporation, it has no constitutional privilege against self-incrimination. *George Campbell Painting Corp. v. Reid*, 392 U.S. 286, 88 S.Ct. 1978, 20 L.Ed.2d 1094 (1968); *United States v. Mobil Oil Corp.*, 464 F.2d 1124 (Fifth Cir. 1972); *United States v. General Motors Corp.*, 403 F.Supp. 1151 (D.Conn.1975).

■■■ § 1321(b)(6) is based on a concept of strict liability and provides that a penalty "shall be assessed" whenever oil is discharged in navigable waters of the United States in harmful quantities as established by regulation. *United States v. General Motors Corp., supra.* The fact that a third party may have been the sole cause of an oil discharge is no defense to the imposition of a civil penalty under § 1321(b)(6). *Id.*

In the instant case, there is no conflicting evidence in the administrative record before the Court nor is it disputed that Defendant's pipeline was damaged by a third person resulting in an oil discharge into the unnamed tributary of Caney Creek. Furthermore, at the oral arguments held in connection with the instant Motions on January 5, 1978, Defendant acknowledged that the amount of oil discharged was a "harmful quantity" within the meaning of § 1321(b)(3). Therefore, in view of the foregoing and as the Court has determined herein that the unnamed tributary, being a part of an overall tributary of the Red River, was a navigable water of the United States within the meaning of § 1321(b)(3) at the time of the oil discharge, the Court finds and concludes that the Hearing Officer properly found Defendant liable for violating § 1321(b)(3).

## AMOUNT OF PENALTY

■■■ Defendant contends that the penalty of $2,500 assessed against it is unconscionably excessive in view of the gravity of the offense and the fact that the oil spill in this case was caused by a third party. Therefore, Defendant asks that its alternative Motion for Summary Judgment be

granted and the penalty be reduced to $1.00.

§ 1321(b)(6) requires that the following factors be considered in determining the amount of a penalty to be assessed under this section: (1) the appropriateness of such penalty to the size of the owner or operator charged; (2) the effect of the penalty on the owner or operator's ability to continue in business; and (3) the gravity of the violation.

In the instant case, the Hearing Officer notified Defendant by a letter dated October 17, 1975, of Defendant's alleged violations of § 1321(b)(3) and informed Defendant that the factors set out above would be considered in assessing a penalty against it under § 1321(b)(6). This letter further informed Defendant that it "may submit information on the size of your business and the effect a civil penalty of $2,500.00 would have on your ability to continue in business." In its letter dated November 20, 1975, submitted in lieu of a hearing, Defendant indicated to the Hearing Officer that the proposed penalty of $2,500 would not seriously affect its ability to continue in business and addressed arguments to the gravity of the alleged violation. However, as Defendant's letter did not contain any information concerning the size of Defendant's business and Defendant never furnished such information to the Hearing Examiner, Defendant apparently chose not to have this factor considered by the Hearing Examiner in reaching his final decision as to the amount of the penalty. Based on the information provided by Defendant and the results of the EPA's investigation of the oil discharge, the Hearing Officer concluded that a penalty in the amount of $2,500 should be assessed against Defendant. This penalty was subsequently affirmed upon administrative appeal.

The Court has reviewed the entire administrative record in this case and it appears that the Hearing Officer fully considered all of the evidence before him as well as the circumstances of this case, including the fact that the oil discharge herein was caused by a third party, in reaching his decision that a violation of the statute occurred and fixing his penalty therefor against the Defendant. The Court is unable to conclude from a review of the record before it and considering that the penalty to be imposed for a violation of the statute involved herein is remedial in nature[5] that the ultimate administrative decision finding a violation of the statute and assessing a penalty against Defendant in the amount of $2,500 are unsupported by substantial evidence. Furthermore, as the penalty imposed against Defendant is within the limits prescribed by 33 U.S.C. § 1321(b)(6), the Court in judicial review has no authority to reduce or eliminate said penalty. *United States v. Beatty, Inc.,* 401 F.Supp. 1040 (W.D.Ky.1975); *see Citizens to Preserve Overton Park, Inc. v. Volpe, supra; In re Vest Transportation Co., Inc.,* 434 F.Supp. 748 (N.D.Miss.1977); *United States v. Independent Bulk Transport, Inc., supra.*

Upon consideration of the administrative record, the Court concludes that the Hearing Officer properly found liability on behalf of Defendant and that there is substantial evidence to support the penalty imposed herein. Accordingly, judgment should be entered overruling Defendant's Motion to Dismiss and affirming the administrative determination and penalty involved in this judicial review and the said penalty should be judicially enforced by entering a judgment of this Court to that effect. Counsel for Plaintiff will prepare an appropriate judgment to this effect and submit the same to the Court for signature and entry herein.

---

**5.** In *Ward v. Coleman, supra,* Judge Eubanks determined that the purpose of the penalty provided under 33 U.S.C. § 1321(b)(6) "is to defray the costs of the Act's administration and of clean-up expenses, and is therefore clearly compensatory and remedial." 423 F.Supp. at 1357. Therefore, it appears that a $2,500 penalty would not be an unreasonable amount to cover the costs of the investigations and administrative decision and appeals in this case as well as any of the costs of recovery of the approximately sixty-five gallons of oil which were not recovered by Defendant.