H.A. TRUE, Jr. and Jean D. True, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Henry A. TRUE, III and Karen S. True, Plaintiffs,

v.

UNITED STATES of America, Defendant.

David L. TRUE and Melanie A. True, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Donald G. HATTEN and Tamma T. Hatten, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Diemer D. TRUE and Susan L. True, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Nos. C82–052 to C82–056.

United States District Court, D. Wyoming.

March 20, 1985.

R. Stanley Lowe, William H. Brown, Casper, Wyo., Claude M. Maer, Jr. and Fred M. Winner, Denver, Colo., for plaintiffs.

Dennis Donohue and Michael Lichtenberg, trial attys. for the Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## ORDER RULING ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT

KERR, District Judge.

The above-entitled matter having come on regularly for hearing before the court upon plaintiffs' (cross) motion for partial summary judgment and the defendant's cross-motion for partial summary judgment; plaintiffs appearing by and through their counsel, William Brown, Claude Maer, Fred Winner, Stanley Lowe, and Ron Morris, and the defendant appearing by and through its counsel, Dennis Donohue, Tax Division, United States Department of Justice, and Michael Lichtenberg, Tax Division, United States Department of Justice, and the court having heard the arguments of counsel and having fully and carefully reviewed the motions, briefs, stipulation of facts, exhibits and all matters pertinent thereto, and being fully advised in the premises; FINDS:

The questions presented for summary adjudication are:

1. Whether civil penalties imposed under 33 U.S.C. § 1321(b)(6) are deduct-

ible. Application of 26 U.S.C. § 162(f).

2. Whether surface damage payments are a cost of construction of an oil pipeline and, therefore, eligible for the investment tax credit.

3. Treatment of Guaranteed Minimum Overriding Royalties as advanced royalties.

The last issue will not be determined by the Court at this time as the matter is presently being considered by the Joint Committee on Taxation as the Internal Revenue Service has conceded the issue. The court, therefore, renders a decision only on the first and second issues.

As the parties have stipulated to the relevant facts and as it appears to the court that there is no dispute as to any material fact with respect to these issues, the same are ripe for summary judgment.

### FACTS COMMON TO BOTH ISSUES

This case arises as the plaintiffs, taxpayers, seek a tax refund for the years 1973, 1974, and 1975. Each of the separate taxpayer cases have been consolidated because the facts, issues, and legal questions are the same in each case. This court has jurisdiction pursuant to 28 U.S.C. § 1346(a)(1).

Belle Fourche Pipeline Company (Belle Fourche) is a corporation engaged in the pipeline transportation of crude oil. During the years in question, 1973 through 1975, Belle Fourche was an electing corporation under Subchapter S of the Internal Revenue Code of 1954, as amended; § 1371 et seq. The plaintiffs in this case are the shareholders of Belle Fourche and as such, all adjustments made by the Internal Revenue Service to the corporation's net income flow through to the individual shareholders, thereby affecting the tax liability of each of the plaintiffs.

### DEDUCTIBILITY OF OIL SPILL PENALTY

During the fiscal year ending March 31, 1975, Belle Fourche paid civil penalties in the amount of $1,200.00 to the United States Coast Guard. This penalty was assessed pursuant to 33 U.S.C. § 1321(b)(6), (§ 311(b)(6) of the Federal Water Pollution Control Act (FWPCA)). The penalty was imposed as a result of oil leakage from some Belle Fourche pipelines.

The Commissioner disallowed the deduction of the penalty in reliance on 26 U.S.C. § 162(f) which prohibits the deduction of "fines and similar penalties."

Code section 162(f) was enacted as part of the Tax Reform Act of 1969. The section provides that: "No deduction shall be allowed under subsection (a) [deductions allowed for ordinary and necessary business expense] for any fine or similar penalty paid to a government for violation of any law."

Prior to the enactment of this code section, the United States Supreme Court had held that taxpayers could not take deductions for fines paid for violations of state penal laws even if the violations were not willfully or knowingly committed. The United States Supreme Court reasoned that such a deduction would severely frustrate public policy and reduce the "sting" of the penalties where the fines had been levied for punitive purposes. See *Truck Rentals, Inc. v. Commissioner*, 356 U.S. 30, 36, 78 S.Ct. 507, 510, 2 L.Ed.2d 562 (1958) and *Hoover Motor Express Co. v. United States*, 356 U.S. 38, 78 S.Ct. 511, 2 L.Ed.2d 568 (1958) where fines paid to states for violation of the maximum weight limits on highways were not allowed as deductions for ordinary and necessary business expenses.

The Senate Finance Committee in its report on the 1969 Tax Reform Act acknowledged this existing case law disallowing deductions for fines and indicated that the enactment of § 162(f) was a codification of prior public policy.

The committee report states:

At the present time there is no statutory provision setting forth a general 'public policy' basis for denying deductions which are 'ordinary and necessary' busi-

ness deductions. Nevertheless, a number of business expenses have been disallowed on the ground that the allowance of these deductions would be contrary to Federal or State 'public policy.' This has been true, for example, in the case of fines. S.REP. No. 552, 91st Cong., 1st Sess. 273 (1969), *reprinted in* 1969 U.S. CODE CONG. & AD.NEWS 1645, 2027, 2310.

Following the 1969 enactment of § 162, the Internal Revenue Service issued proposed regulations on May 27, 1971. The regulations relating to § 162(f) suggested that all fines and penalties, whether criminal or civil, were not deductible.

The Senate Finance Committee in its Report on the Revenue Act of 1971 took an unusual step to comment on the proposed regulations and clarify the legislative intent behind § 162(f). The relevant portion of the report states:

> In connection with the proposed regulations relating to the disallowance of deductions for fines and similar penalties (sec. 162(f)) questions have been raised as to whether the provision applies only to criminal 'penalties' or also to civil penalties as well. In approving the provisions dealing with fines and similar penalties in 1969, it was the intention of the committee to disallow deductions for payments of sanctions which are *imposed under civil statutes but which in general terms serve the same purpose as a fine exacted under a criminal statute.* The provision was intended to apply, for example, to penalties provided for under the Internal Revenue Code in the form of assessable penalties (subchapter B of chapter 68) as well as to additions to tax under the internal revenue laws (subchapter A of chapter 68) in those cases where the government has the fraud burden of proof (i.e., proof by clear and convincing evidence). It was also intended that this rule should apply to similar type payments under the laws of a State or other jurisdiction.
>
> On the other hand, it was not intended that deductions be denied in the case of

sanctions imposed to encourage prompt compliance with requirements of law. Thus, many jurisdictions impose 'penalties' to encourage prompt compliance with filing or other requirements which are really more in the nature of late filing charges or interest charges than they are fines. It was not intended that this type of sanction be disallowed under the 1969 action. Basically, in this area, the committee did not intend to liberalize the law in the case of fines and penalties. (emphasis added). S.REP. No. 437, 92nd Cong., 1st Sess. 73 (1971), *reprinted in* 1971 U.S.CODE CONG. & AD.NEWS 1825, 1918, 1979–1980.

The key point it seems in determining whether or not a civil penalty is deductible turns on the nature of the penalty; that is, whether the penalty serves a purpose similar to a criminal fine or penalty.

 This is the view which has been expressed in the case law following the enactment of § 162(f). These later cases have developed certain criteria for determining whether or not a civil penalty is similar in purpose to a criminal fine or penalty. Specifically, a penalty is criminal in nature and, therefore, not deductible if its purpose is to punish and/or deter, but a penalty is not criminal in nature and, therefore, deductible if the purpose which it serves is to encourage compliance with the law or if it is remedial or compensatory in nature. *Middle Atlantic Distributors v. Commissioner,* 72 T.C. 1136, 1143 (1979); *Southern Pacific Transportation Co. v. Commissioner,* 75 T.C. 497, 652 (1980); *Huff v. Commissioner,* 80 T.C. 804, 824 (1983).

In *Southern Pacific Transportation Co. v. Commissioner,* 75 T.C. 497, 652 (1980) the court relying on Middle Atlantic held that:

> [c]ongress, by use of the word 'similar,' was not intending to distinguish between criminal and civil sanctions, but rather was intending to make a distinction between different types of civil penalties. If a civil penalty is imposed for purposes of enforcing the law and as

punishment for the violation thereof, its purpose is the same as a fine exacted under a criminal statute and it is 'similar' to a fine. However, if the civil penalty is imposed to encourage prompt compliance with a requirement of the law, or as a remedial measure to compensate another party for expenses incurred as a result of the violation, it does not serve the same purpose as a criminal fine and is not 'similar' to a fine within the meaning of section 162(f).

The court further held that in deciding if a civil penalty is criminal in nature, "[t]he appropriate consideration is not the type of conduct which gives rise to the violation resulting in the penal imposition but is the purpose which the statutory penalty is to serve." *Id.* at 653.

The real determination that must be made in the case at hand, then, is whether the penalty imposed under 33 U.S.C. § 1321(b)(6) is criminal in nature.

There is no doubt that this section is a civil penalty. In *United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980), the Supreme Court determined that 33 U.S.C. § 1321(b)(6) was civil and did not require the constitutional safeguards and privileges, such as protection against self-incrimination, normally available under a criminal statute.

Justice Blackmun in his concurrence stated that:

[a]lthough the fines conceivably could be used to promote primarily deterrent or retributive ends, the fact that collected assessments are deposited in a revolving fund used to defray the expense of clean-up operations is a strong indicator of the pervasively civil and compensatory thrust of the statutory scheme.... 33 U.S.C. § 1321(k). *Id.* at 256, 100 S.Ct. at 2645.

The funds received under § 1321(b)(6) are "[d]eposited in a revolving fund to pay the costs of administering the act and to finance cleanup of oil spills when the costs are not otherwise recoverable." *United States v. Texas Pipeline Co.,* 611 F.2d 345, 347 (10th Cir.1979).

■ In addition to the funds being used for remedial purposes, the statute is one which imposes strict liability on an operator for a discharge of harmful substances, regardless of fault. Because strict liability involves the shifting of fault to the one most able to bear the cost and insure against the risk, it has been held that the FWPCA is a means of transferring the risk from the public to the operator of the facility causing a harmful discharge. *Ward v. Coleman,* 423 F.Supp. 1352, 1357 (W.D. Okla.1976); *rev'd* 598 F.2d 1187 (10th Cir. 1979); *rev'd United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980).

In *United States v. Marathon Pipeline Co.,* 589 F.2d 1305 (7th Cir.1978), the court there found that:

[s]trict liability, though performing a residual deterrent function, is based on the economic premise that certain enterprises ought to bear the social costs of their activities. In the FWPCA in general, Congress has made a legislative determination that polluters rather than the public should bear the costs of water pollution.... *Id.* at 1309; See also *United States v. Tex-Tow, Inc.,* 589 F.2d 1310, 1315 (7th Cir.1978).

■ This court agrees with the holdings in the above cases and finds that the purpose behind 33 U.S.C. § 1321(b)(6) of the FWPCA is remedial and compensatory in nature, as the penalty is imposed irregardless of fault, with proceeds being used for costs of administration and clean-up. The penalty is not criminal in nature and does not serve the same purpose as a criminal fine; therefore, the penalty does not fall within the scope of § 162(f). The penalty is, therefore, deductible and should be allowed by the commissioner. The plaintiffs' motion for partial summary judgment should be granted.

### INVESTMENT TAX CREDIT ON SURFACE DAMAGE PAYMENTS

During the years 1973, 1974, and 1975, Belle Fourche Pipeline Company acquired

easements from landowners for the purpose of constructing pipelines for the transportation of oil from producing wells to main transmission lines.

In acquiring these easements, Belle Fourche paid a purchase price or "roddage fees" to each landowner based on a per rod figure. The easement contract among other things provided that Belle Fourche would be liable for all damages caused by the construction of the pipeline.

At the same time that these easement contracts were entered into, Belle Fourche negotiated with the landowners for prepayment of any damages. These damage contracts, entitled "Release and Agreement," provided that the landowner would release and discharge Belle Fourche from all liability of damage claims which might arise prior to and including the completion date of the pipeline in exchange for a settlement payment for damages. The amount of these surface damage payments for the three years totaled $123,494.59 (1973—$31,620.92; 1974—$18,991.04; and 1975—$72,882.63). While both agreements were executed at approximately the same time and one draft was used to pay both the "roddage fees" and the "surface damage payments," the contracts were separate agreements, apparently negotiated independently.

Originally Belle Fourche did not claim that these damage payments were eligible for the investment tax credit as part of the cost of constructing the pipeline. See 26 U.S.C. §§ 38, 46, 47, and 48. After an audit of the plaintiffs' returns for the years in question, plaintiffs filed amended returns seeking a refund for those amounts connected with the surface damage payments. These refunds were denied and the plaintiffs seek a determination by this court as to the treatment of the surface damage payments.

This court must decide whether the surface damage payments made by Belle Fourche to landowners are eligible for investment tax credit treatment. It is, therefore, necessary to determine if the damage payments were actually part of the acquisition costs of the easements *OR* were a part of the cost of constructing the pipelines.

■ The investment tax credit is allowed on "section 38 property" which includes "other tangible property ... but only if such property—(1) is used as an integral part of manufacturing, production, or extraction or of furnishing transportation, communications, electrical energy, gas, water, or sewage disposal services...." § 48(a)(1). Treasury Regulation § 1.48–1(d)(3) states that "examples of transportation businesses include ... *oil pipeline companies.*" Treasury Regulation § 1.48–1(d)(4) provides that, "specific examples of property which normally would be used as an integral part of one of the specific activities are blast furnaces, *oil and gas pipelines....*" It is, therefore, apparent that the pipelines of Belle Fourche are generally considered qualifying property under the investment tax credit provisions.

There is no dispute that the acquisition costs of the easements are not to be given investment tax credit treatment as they are intangible property and not tangible property within the contemplation of the investment tax credit provisions.

■ The case law is split on the issue of whether surface damages paid in connection with the construction of a pipeline are eligible for investment tax credit treatment. In 1970, the Fifth Circuit decided the case of *Tenneco, Inc. v. United States,* 433 F.2d 1345 (5th Cir.1970), wherein the court there determined that the damage payments were really a cost of acquiring the easement for the pipeline. The court stated that the payments [were] "primarily easement costs and only secondarily costs of the construction of the pipeline." *Id.* at 1349.

Later, however, in 1977, the United States Court of Claims decided *Mapco, Inc. v. United States,* 556 F.2d 1107, 214 Ct.Cl. 389 (1977). The court there respectfully disagreed with the Fifth Circuit decision in *Tenneco* and held that "[d]amage payments are an integral part of the cost of constructing a pipeline, rather than part of

the cost involved in acquiring right-of-way easements for the pipeline." *Id.* at 1114.

The damage payments are made to the landowners to relieve the easement holder (Belle Fourche) from future liability for damages caused in the construction and laying of the pipeline. With all due respect to the Fifth Circuit, we agree with the reasoning of the court in *Mapco* and find that the damage payments made in this case were a part of the cost of constructing the pipeline, not a cost of acquiring the easement.

> Logically, it seems that such damage payments are as much a part of the cost of constructing the pipeline as is the expense in purchasing pipe for the pipeline. *Mapco v. United States*, 556 F.2d at 1114.

The court notes that in the present case, Belle Fourche made damage payments prior to the actual occurrence of damages and at the same time that payments were made for the "roddage fees", while in *Mapco*, the damage payments were made after the damage occurred. This court thinks that the time for the payment of damages is irrelevant and it is enough that the payments were made to compensate the landowners for any harm done to their land in the construction of the pipeline.

The defendant argues that because the damage payments were not refundable to Belle Fourche if the pipelines were not constructed, that the damage payments would then become an acquisition cost. This court will not concern itself with possibilities which are irrelevant in this case. The facts clearly show that in all instances, the pipelines were built on the acquired easements.

This court sees no reason to punish the plaintiffs for shrewd business practices whereby the plaintiffs chose to save both time and money by negotiating for acquisition of the easement and for damage settlement at the same time.

There is no evidence of fraud that the plaintiffs attempted to disguise easement acquisition payments as damage payments, particularly as plaintiffs did not even at-

tempt to apply the investment tax credit to the damage payments until sometime later after the *Mapco* case was decided.

This court again reiterates its agreement with the *Mapco* court and holds that the damage payments made to landowners in the amount of $123,494.59 for the years 1973, 1974, and 1975 are costs of constructing the pipeline and, therefore, eligible for investment tax credit treatment. Plaintiffs' motion for partial summary judgment should, therefore, be granted.

NOW, THEREFORE, IT IS

ORDERED that plaintiffs' motion for partial summary judgment on the issues of oil spill penalty deductions and investment tax credit treatment for surface damage payments be, and the same are, hereby granted; it is

FURTHER ORDERED that defendant's cross-motion for partial summary judgment be, and the same is, hereby denied.